UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IN RE CRM HOLDINGS, LTD.                     10 CIV 00975 (RPP)
SECURITIES LITIGATION
                                             **OPINION AND ORDER**

------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

**I.    BACKGROUND**[1]

On May 10, 2012, this Court issued an Opinion and Order (the "Opinion") dismissing claims that Plaintiffs, a proposed class of stockholders in CRM Holdings, Ltd. ("CRMH"), had asserted against CRMH fiduciaries Daniel G. Hickey, Jr., Daniel G. Hickey, Sr., Martin D. Rakoff, and James J. Scardino (collectively, the "Individual Defendants") in Plaintiffs' First Consolidated Amended Complaint. (Op. at 54, May 10, 2012, ECF No. 38.) The Court found that Plaintiffs, in alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. § 78j(b), had failed to make an adequate showing of scienter as to each of the Individual Defendants and of loss causation as required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78U-4(b)(2), and Rule 9(b) of the Federal Rules of Civil Procedure. (Op. at 3-5, 54.) The Court therefore dismissed Plaintiffs' claims against the Individual Defendants for failure to plead fraud with particularity under Rule 9(b) and for failure to state a claim upon which relief could be granted under Rule 12(b)(6). (Id.) The Court also denied Plaintiffs leave to file a Second Consolidated Amended Complaint. (Id. at 54.)

On May 24, 2012, Plaintiffs filed a Motion for Reconsideration pursuant to Rule 6.3 of the Local Civil Rules of the Southern District of New York. (Mot. for Recons. Pursuant to Local

---

[1] Because the factual and procedural history of this case was discussed at length in the Court's Opinion dated May 10, 2012, (see Op. at 1-35), the Court recounts the history of this case only as is necessary to dispose of the two pending motions for reconsideration.

1

Civil Rule 6.3 (the "Local Rule 6.3 Mot."), ECF No. 39; see also Mem. in Supp. of Local Rule 6.3 Mot. (the "Local Rule 6.3 Mem.") at 1 n.2, ECF No. 40.)  Less than two weeks later, on June 4, 2012, Plaintiffs filed a Motion for Reconsideration Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.  (Mot. for Recons. Pursuant to Fed. R. Civ. P. 59(e) (the "Rule 59 Mot."), ECF No. 41; see also Mem. in Supp. of Rule 59 Mot. (the "Rule 59 Mem."), ECF No. 42.)  The Rule 59 Motion purported to incorporate by reference "all of the arguments . . . contained within [the] Local Rule 6.3 Motion."  (Rule 59 Mem. at 1 n.1.)

      Plaintiffs' two motions for reconsideration thus argue that reconsideration of the Court's ruling on the merits is warranted because the Court (1) overlooked controlling authority in dismissing Plaintiffs' claim for failure to show scienter, (Local Rule 6.3 Mem. at 10-15; Rule 59 Mem. at 17-24, 25 n.19; Reply Mem. at 4-6); (2) overlooked or improperly excluded a number of Plaintiffs' most critical factual allegations in determining that Plaintiffs had failed to show scienter, (Local Rule 6.3 Mem. at 10-21; Rule 59 Mem. at 17-24, 25 n.19; Reply Mem. at 5-10); and (3) incorrectly determined that Plaintiffs had failed to show causation, (Local Rule 6.3 Mem. at 22-25; Rule 59 Mem. at 25 n.19; Reply Mem. at 10 n.15).  Plaintiffs also argue that the Court should reconsider and vacate its decision to deny leave to amend because intervening changes in controlling law and "new evidence" support amendment and because Plaintiffs did not have the benefit of either discovery or adversarial briefing before their claims were dismissed.  (Local Rule 6.3 Mem. at 3-10; Rule 59 Mem. at 3-13; Reply Mem. at 4-5, 12-14.)

      After Plaintiffs filed these two reconsideration motions, this Court issued an order directing the Individual Defendants to consolidate their responses to the Local Rule 6.3 Motion and to the Rule 59 Motion.  (Order at 2, June 15, 2012, ECF No. 46.)  Thus, on July 6, 2012, the Individual Defendants filed a single memorandum in opposition to Plaintiffs' motions for reconsideration.  (Mem. of the Indiv. Defs. in Opp'n to Pls.' Mots. for Recons. ("Opp'n Mem."),

ECF No. 47.)  Plaintiffs then filed a consolidated memorandum in reply on July 20, 2012.  (Pls.' Reply in Supp. of Mots. for Recons. ("Reply Mem."), ECF No. 48.)

## II.    APPLICABLE LEGAL STANDARD

### A.  Reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure

As an initial matter, it is not clear that Rule 59(e) applies in this case.  Under the Federal Rules of Civil Procedure, Rule 59 permits modification of a "judgment."  Fed. R. Civ. P. 59(e). Rule 54, in turn, defines a "judgment" as any "decree [or] any order from which an appeal lies." Fed. R. Civ. P. 54(a).  Rule 54 further makes clear that when an action involves multiple parties, a "court may direct the entry of a final judgment as to one or more [of the parties,] but fewer than all . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."  Fed. R. Civ. P. 54(b).  If a court does not enter "such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims [against] . . . fewer than all the parties shall not terminate the action <u>as to any of the claims or parties</u>."  <u>Id.</u>  (emphasis added).

In this case, Plaintiffs filed claims against the Individual Defendants and also against CRMH.  (First Consol. Am. Compl. (the "Am. Compl."), ¶¶ 2-3, 30-34, ECF No. 16; <u>see also</u> Local Rule 6.3 Mem. at 1 n.2.)  The Court's May 10, 2012 Opinion was, however, "confined" to the claims levied against the Individual Defendants.  (Op. at 1.)  The Court stayed the entire action with respect to CRMH—since renamed "Majestic Capital"—because the company was in bankruptcy proceedings.  (<u>Id.</u>; <u>see also</u> Local Rule 6.3 Mem. at 1 n.2; Reply Mem. at 1 n.1.)  The Opinion did not contain an "express determination and direction" for the entry of final judgment as to the Individual Defendants, and thus the claims against "the named parties" in this action

were not fully resolved.[2]  See Ruffolo v. Oppenheimer & Co., Inc., 949 F.2d 33, 35-36 (2d Cir. 1991) (holding that where a complaint was dismissed as to only one of two defendants "the district court order of dismissal did not terminate the action as to any of the claims or parties"). Reconsideration of the Court's Opinion pursuant to Plaintiffs' Rule 59 Motion is therefore not proper and the only ground available for Plaintiffs to move for reconsideration is under Local Rule 6.3.[3]  See In re Palermo, No. 08 CIV 7421, 2011 WL 446209, at *4 (S.D.N.Y. Feb. 7, 2011) (finding reconsideration under Rule 59(e) "inappropriate" where order of dismissal was not a Rule 54 "judgment" and applying Local Rule 6.3 to review of motion for reconsideration).

### B. Reconsideration Under Rule 6.3 of the Local Civil Rules of the Southern District of New York

Under Local Rule 6.3, a party seeking reconsideration must set forth "concisely the matters or controlling decisions which counsel believes the court has overlooked," and, unless a court directs otherwise, a party may not file any affidavits.  Local Civ. R. 6.3.  The standard for reconsideration under Local Rule 6.3 is "strict," and reconsideration will generally be denied unless a moving party can point to matters that "might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Linden v. Dist. Council 1707–AFSCME, 415 F. App'x 337, 338–39 (2d Cir.

---

[2]Plaintiffs argue that they are entitled to a Rule 54 judgment because CRMH is in bankruptcy.  (Reply Mem. at 1 n.1.)  In support of this argument, they cite Pereira v. Cogan, No. 00 CIV 619, 275 B.R. 472 (S.D.N.Y. 2002), for the proposition that "[c]ourts . . . frequently f[i]nd no just reason for delay, and enter[] a Rule 54(b) judgment, when the judgment debtor is insolvent or may become insolvent before the conclusion of judicial proceedings."  Pereira, 275 B.R. at 474.  Plaintiffs fail to realize, however, that the plaintiffs in Pereira, unlike in this case, specifically moved the court for a judgment under Rule 54(b).  See Pereira, 275 B.R. at 476.

[3]As a practical matter, consideration of Plaintiffs' request for reconsideration is not affected by which rule the Court determines should apply.  This is because "[m]otions for reconsideration pursuant to Rule 59(e) . . . are governed by the same standards as those governing motions under [Local] Rule 6.3."  Naiman v. New York Univ. Hosp. Ctr., No. 95 CIV 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005); see also Henderson v. Metro. Bank & Trust Co., 502 F. Supp. 2d 372, 375 (S.D.N.Y. 2007) ("The standards governing motions to alter or amend judgment pursuant to Rule 59(e) and motions for reconsideration or reargument under Local Rule 6.3 are identical.").

4

2011) (affirming dismissal of reconsideration motion where movant did not identify any relevant facts or controlling authority that the lower court had overlooked).

A motion to reconsider "should not be granted where the moving party is solely attempting to relitigate an issue that already has been decided." New York v. Parenteau, 382 F. App'x 49, 50 (2d Cir. 2010).  Furthermore, reconsideration is not an invitation for parties "to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings."  de los Santos v. Fingerson, No. 97 CIV 3972, 1998 WL 788781, at *1 (S.D.N.Y. Nov. 12, 1990).  Indeed, "[t]he purpose of the local rule confining reconsideration to matters 'overlooked' and barring the submission of affidavits unless authorized by the court is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."  Id. (internal quotation marks omitted).

### III. DISCUSSION

**A. Under Local Rule 6.3, reconsideration of the dismissal of Plaintiffs' Amended Complaint with respect to the Individual Defendants is not warranted because Plaintiffs have not shown that the Court overlooked any controlling authority or critical factual allegations.**

    i. <u>No controlling authority was overlooked in determining that Plaintiffs had failed to show scienter</u>

Plaintiffs first argue that reconsideration is warranted because this Court overlooked Supreme Court precedent requiring it to consider "whether <u>all</u> of the facts alleged [in a complaint], taken collectively, give rise to a strong inference of scienter."  (Reply Mem. at 5 (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 310 (2007) (original alterations omitted); see also id. (citing Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1324 (2011)); Local Rule 6.3 Mem. at 10; Rule 59 Mem. at 17-18.)  Plaintiffs' argument fails,

however, because this Court cited and considered relevant Supreme Court and Second Circuit precedent in its Opinion.  (See, e.g., Op. at 36-40, 44.)  No such controlling authority was overlooked in dismissing Plaintiffs' Amended Complaint with respect to the Individual Defendants for failure to plead fraud with particularity under Rule 9(b) and for failure to state a claim under Rule 12(b)(6).  (See Op. at 5, 54.)

Indeed, in dismissing Plaintiffs' claims, the Court discussed many of the same cases upon which Plaintiffs now rely in their motions for reconsideration.  (Compare Op. at 36-40 with Local Rule 6.3 Mem. at 10-11 and Rule 59 Mem. at 17-18.)  Plaintiffs' arguments thus seem better characterized as an attempt to reargue how this Court applied Supreme Court and Second Circuit case law and not as an effort to show that this Court actually overlooked any controlling authority.  Under Local Rule 6.3, this type of relitigation is not permitted.  See Rothschild v. Cree, Inc., 569 F. Supp. 2d 367, 368 (S.D.N.Y. 2008) ("Where the movant fails to show that any controlling authority or facts have actually been overlooked, and merely offers substantially the same arguments he offered on the original motion . . ., the motion for reconsideration must be denied.") (internal quotation marks and alteration omitted).

      ii. <u>No critical factual allegations were overlooked in determining that Plaintiffs had failed to show scienter</u>

Plaintiffs next contend that the Court overlooked a number of critical factual allegations in determining that Plaintiffs failed to show scienter with respect to each of the Individual Defendants.  In particular, Plaintiffs argue that the Court overlooked their allegations about the Section 32 Settlements, the adverse findings in the Kickey Report, and the proffered evidence of "stair-step" reserving.  (Local Rule 6.3 Mem. at 10-16; Rule 59 Mem. at 20-24; Reply Mem. at 15.)  Plaintiffs further argue that the Court improperly construed their allegations that the Individual Defendants had knowledge of HITNY's "underfunded" status prior to the IPO; made

false representations about CRM's core business activities; and had motive to sell their CRM shares when the company went public in December 2005.  (Id.)

Plaintiffs' arguments are unavailing.  Pursuant to Supreme Court and Second Circuit precedent, the Court reviewed Plaintiffs' Amended Complaint in its entirety.[4]  (See Op. at 5-36 (recounting claims alleged in Amended Complaint); see also Pereira v. Aetna Cas. & Surety Co. (In re Payroll Express Corp.), No. 95 CIV 4385, 1997 WL 539777, at *1 (S.D.N.Y. Aug. 28, 1997) ("All materials and arguments submitted in support of (or in opposition to) a motion are presumed to have been considered by the Court."), aff'd, 186 F.3d 196 (2d Cir. 1999).  Indeed the Opinion discusses every category of alleged wrongdoing set forth by Plaintiffs in their Amended Complaint.  (Op. at 43-44, 46-51.)  For example, the Court explicitly considered the Section 32 Settlements, the adverse findings in the Kickey Report, and the proffered evidence of "stair-step" reserving both in the Opinion, (see, e.g., Op. at 13, 18, 34, 46-49), and at oral argument, (Hr'g Tr. at 8, 12-14, 38-45).  The Court also carefully considered Plaintiffs' allegation that, by November 2005, the Individual Defendants knew HITNY "was underfunded." (Op. at 11, 13 n.12, 36, 38.)  The Court nonetheless found that CRM's disclosures about HITNY in the December 2005 IPO were not misleading because Plaintiffs could not show that the WCB had concluded HITNY was "underfunded" prior to the IPO.[5]  (See Op. at 5, 41.)  For this same reason, the Court rejected Plaintiffs' allegation that the Individual Defendants who had sold their

---

[4]The Court even delayed its decision so that it could review the "numerous documents" to which Plaintiffs cited in their Amended Complaint, but did not make available to the Court until February 17, 2012.  (Op. at 1 n.1.)

[5]As the Opinion explained in detail, "the term 'underfunded' describes a specific determination made by the WCB regarding a GSIT's regulatory asset-to-liability ratio."  (Op. at 41.)  The Opinion further made clear that "[o]nly the WCB has the ability to make this determination after receiving a GSIT's GAAP financial report . . . [and] in the case of HITNY, the 2005 [GAAP] report was not . . . submitted to the WCB until January 31, 2006 [and] it was not until April 2006 that the WCB deemed HITNY to be underfunded."  (Op. at 41; see also id. at 11, 13 n.12 (discussing the statements about HITNY underfunding in the November 2005 HITNY board minutes).)

CRM shares during the December 2005 IPO had motive and opportunity not to disclose that HITNY was underfunded when the company went public.  (Op. at 38-43.)

The Court also considered, but rejected on the basis of Second Circuit case law, Plaintiffs' claim that "performance based bonuses," which certain of the Individual Defendants were to receive, made out a good claim of motive and opportunity.  (Op. at 43-44 (quoting Kalnit v. Eichler, 246 F.3d 131, 140 (2d Cir. 2000) ("If scienter could be pleaded on th[e] basis [of performance-based bonuses] alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.")).)

Finally, the Court thoroughly considered Plaintiffs' allegation that the Individual Defendants had falsely represented CRM's "core business."  (See Op. at 48-49.)  The Court ruled, however, that Plaintiffs had "failed to identify an actionable falsehood or misrepresentation made by any of the Individual Defendants relating to the 'core business' of the company that would tend to indicate an intent to deceive, manipulate, or defraud."  (Op. at 48-49.)

There is therefore no ground for Plaintiffs' assertion that the Court overlooked critical factual allegations in the Amended Complaint.[6]  Plaintiffs instead seem to be arguing about the result that this Court reached after it considered all of the facts alleged.  This type of reargument cannot constitute the basis for reconsideration under Local Rule 6.3.  Cf. Shrader, 70 F.3d at 257

---

[6] To the extent that Plaintiffs claim the Court failed to consider certain allegations because they were not specifically referenced in the Opinion, Plaintiffs' claims lose.  As has been made clear, "just because a court does not specifically reference every factual detail or incident to which a party attaches special significance does not necessarily establish that the Court did not consider that particular mater."  Ferrand v. Credit Lyonnais, 292 F. Supp. 2d 518, 521-22 (S.D.N.Y. 2003), aff'd 110 F. App'x 160 (2d Cir. 2004); see also Thomas v. iStar Fin., Inc., 448 F. Supp. 2d 532, 534 (S.D.N.Y. 2006), aff'd, 629 F.3d 276 (2d Cir. 2010) (same).  Indeed, were it necessary for a court to address every factual allegation, plaintiffs would be encouraged to make multitudinous allegations—just as the Plaintiffs did in the Amended Complaint at issue here—and this would be the opposite of confining a pleading to its essential factual allegations.

(A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided.")

      iii. <u>No evidence submitted by Plaintiffs was improperly excluded before determining that Plaintiffs had failed to show scienter</u>

Plaintiffs also argue that the Court improperly excluded: (1) "the [April 15, 2008] New York State Workers' Compensation Board ("WCB") Letter and ¶ 151 of the Complaint, (Op. at 28 n.15); (2) the [December 9, 2009] New York Attorney General ("NYAG") Notice and ¶ 20 of the Complaint, (Op. at 32 n.18); and (3) the [December 10, 2009] WCB complaint and ¶ 168 of the Complaint, (Op. at 32 n.19)."  (Rule 59 Mem. at 18 (internal citation to Bates numbers excluded).)  Plaintiffs contend that these documents should have been considered by the Court because they are "replete with detailed factual information of obvious relevance to this case, which the Court should have considered in evaluating the sufficiency of the Complaint."  (Rule 59 Mem. at 19; <u>see also</u> Local Rule 6.3 at 10-11.)

Critically though, Plaintiffs' arguments fail to show that reconsideration of the decision to exclude these materials is warranted.  As the Opinion explained, allegations of wrongdoing contained in the WCB Letter, the NYAG Notice, and the WCB complaint were excluded because the allegations therein were "unproven" and thus the allegations had "no evidentiary bearing" on Plaintiffs' case.[7]  (Op. at 28 n.28, 45, 46 n.22.)  In so doing, this Court relied on <u>Lipsky v. Commonwealth United Corporation</u>, 551 F.2d 887 (2d Cir. 1976), which upheld a district court's decision to strike portions of a complaint that were based on allegations from a separate legal action that had not been fully adjudicated.  551 F.2d at 892.  Plaintiffs claim that this reliance was improper because, "after <u>Lipsky</u>, the Supreme Court and the Second Circuit have permitted

---

[7]The WCB Letter, the NYAG Notice, and the WCB complaint relied on the reports of financial auditors, and many of these reports were incorporated by reference into the Plaintiffs' Amended Complaint, (<u>see</u> Am. Compl. at 2 n.1, Ex A ("App. to Pls.' Am. Compl."); <u>see also</u> Rule 59 Mem. at 1 n.3 (explaining nature of reports in Plaintiffs' Appendix to the Amended Complaint)), and thus considered by the Court.  (Op. at 45-46.)

plaintiffs to rely upon complaints filed in other actions to allege securities fraud." (Reply Mem. at 7; Local Rule 6.3 Mem. at 11.)

Plaintiffs fail, however, to cite any controlling authority overturning or vacating the Second Circuit's holding in Lipsky. Instead, Plaintiffs cite several district court cases for the proposition that "'neither Circuit precedent nor logic supports' an absolute rule that 'any portion of a pleading that relies on unadjudicated allegations in another complaint is immaterial under Rule 12(f).'" (Reply Mem. at 7 (quoting In re Bear Stearns Mortg. Pass-Through Certificates Litig., No. 08 CIV 8093, 2012 WL 1076216, at *768 n.24 (S.D.N.Y. Mar. 30, 2012)); see also id. at 8 n.11 (citing Barcher v. New York Univ. Sch. of Law, 993 F. Supp. 177, 181 (S.D.N.Y. 1998)).) But these district court cases are not binding on this Court, and other courts in this district have adopted a position in line with the decision advanced in the Opinion—that "paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed. R. Civ. P. 12(f)." RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009), aff'd, 387 F. App'x 72 (2d Cir. 2010); see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 218 F.R.D. 76, 79 (S.D.N.Y. 2003).

> iv. No controlling authority or critical factual allegations were overlooked in determining that Plaintiffs had failed to show loss causation

Finally, Plaintiffs argue that the Court failed to "apply controlling case law to the facts alleged" when it determined that Plaintiffs failed to plead loss causation. (Local Rule 6.3 Mem. at 21; see also Reply Mem. at 10 n.15.) This argument is without merit, however. In the Opinion, the Court set forth the correct and prevailing standard for demonstrating loss causation in the Second Circuit. (Op. at 52 (citing Lentell v. Merrill Lynch, 396 F.3d 161, 168 (2d Cir. 2005)).) This standard requires a plaintiff to "allege that [a] misstatement or omission concealed

something from the market that, when disclosed, negatively affected the value of the security." (Id.)  The Court also discussed Second Circuit case law cautioning that "[i]nvestors cannot establish loss causation merely by relying on an after-the-fact 'negative characterization of already-public information.'"  (Op. at 53 (quoting In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d 501, 512 (2d Cir. 2010)).)

Applying this case law, the Court then determined that Plaintiffs had failed to show loss causation because:

> CRMH . . . disclosed the inherent risks associated with the GSIT business, the material facts pertaining to the WCB's determination of underfunding with regards to the trusts that it administered, and all subsequent action taken by the WCB in a timely manner, well before the April 2008 date when Plaintiffs allege that "the truth began to emerge."

(Op. at 53.)

The Court based its determination on the fact that the CRMH IPO Prospectus, filed December 20, 2005, as well as other documents filed thereafter, had "highlighted the extent to which [CRMH's] business was dependent on a small number of trusts," and had sufficiently warned of the harm that the Company would suffer "if it were to lose one of these trusts or . . . underestimate liabilities."  (Op. at 53 (quoting Decl. of Marjorie E. Sheldon in Supp. of Mot. to Dismiss, ("Sheldon Decl.") Ex. B, Jan. 7, 2011, ECF No. 20-2); see also id. 52-53 (citing Am. Compl. ¶¶ 83, 85)).  In addition, the Court found that statements in the SPO Registration Statement and the SPO Prospectus provided sufficient notice that some of CRMH's groups were "likely to be deemed underfunded, that the WCB was conducting an inquiry into the actuar[ial] work done by a third-party actuary, and that CRMH was asked to provide testimony and copies of the underlying data that was submitted to the actuary."  (Op. at 53 (citing Sheldon Decl. Ex. H & I).)

11

In their motions for reconsideration, Plaintiffs do not point to any controlling legal authority that contradicts the Court's reasoning or any factual allegations that the Court overlooked in reaching this decision. Plaintiffs instead rehash arguments which they have already raised about how news that CRM might lose its New York license was "a materialization of the central risk concealed by [the Individual D]efendants' elaborate fraud," (Local Rule 6.3 Mem. at 21), and why the Individual Defendants' disclosures about such risk were too generic to have actually warned investors, (id. at 21-25). As just discussed, the Court has already considered these arguments and sees no reason to reconsider them under Local Rule 6.3. See de los Santos, 1998 WL 788781, at *1 (Reconsideration is not an invitation for parties "to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.").

### B. Under Local Rule 6.3, reconsideration of the denial of leave to amend is not justified.

The grant or the denial of an opportunity to amend a complaint falls squarely within the discretion of a district court. See Foman v. Davis, 371 U.S. 178, 182 (1962) ("Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion."). Here, Plaintiffs argue that the Court abused its discretion in denying leave to amend and that reconsideration is "justified" under Local Rule 6.3. (Rule 59 Mem. at 11-12; Local Rule 6.3 Mem. at 5; Reply Mem. at 4-5, 13-14.) Plaintiffs specifically contend that the Court should reconsider and vacate its denial of leave to amend in light of (1) an intervening change in the controlling law; (2) "new evidence" alleged to support their claims; and (3) the fact that Plaintiffs did not have the benefit of

discovery or adversarial briefing before their claims were dismissed with prejudice. (Id.) None of these arguments have merit.

> i. No intervening change in controlling authority justifies reconsideration of the denial of leave to amend

Plaintiffs claim that the Second Circuit's recent decision in Panther Partners, Inc. v. Ikanos Communications, Inc. ("Panther II"), 681 F.3d 144 (2d Cir. 2012), constitutes an "intervening change of controlling law" that 'justifie[s]" reconsideration of the decision to deny leave to amend. (Reply Mem. at 11; see also Rule 59 Mem. at 4.) Panther II was published on May 25, 2012, and thus the Plaintiffs are correct in at least one respect—the case is intervening to this Court's May 10, 2012 Opinion. Plaintiffs err, however, in attempting to construe Panther II as "a change of controlling law." (Reply Mem. at 11-12; Rule 59 Mem. at 4-5.)

In Panther, plaintiffs alleged that a semiconductor company had violated Sections 11, 12, and 15 of the Securities Act by failing to include in their offering statements a disclosure about known defects in the company's semiconductor chips. Panther II, 681 F.3d at 115; see also Panther Partners, Inc. v. Ikanos Commc'ns, Inc. ("Panther I"), 347 F. App'x 617, 619-20 (2d Cir. 2009). The district court dismissed with prejudice plaintiffs' complaint for failure to state a claim because "[n]o plausibly pleaded fact suggest[ed] that [the company] knew or should have known the scope or magnitude of the defect problem." Panther I, 347 F. App'x at 118. On appeal, the Second Circuit upheld the district court's dismissal of plaintiffs' complaint, but ordered that the case be remanded for further consideration as to the opportunity for leave to amend.[8]  Id. at 621; see also Panther II, 681 F.3d at 118. Following remand, the district court

---

[8]In Panther I, the Second Circuit also made clear, "there is no general rule that just because [a] complaint is brought under the federal securities laws, a plaintiff will automatically receive leave to amend." 347 F. App'x at 621. This statement effectively undercuts Plaintiffs' argument to the contrary—that whenever a motion to dismiss is granted for lack of specificity under Rule 9(b) of the Federal Rules of Civil Procedure, a court should grant leave to amend. (See Rule 59 Mem. at 13-14 (citing Luce v. Edelstein, 802 F.2d 49 (2d Cir. 1986) and Ronzani v. Sanofi S.A., 899 F. 2d 195 (2d Cir. 1990)); see also Local Rule 6.3 Mem. at 3-4; Reply Mem. at 4-6.) Moreover, some district courts

13

again denied the plaintiffs leave to amend because it found that they had failed to allege additional facts showing that the company knew the defect rate of the semiconductor chips was "above average." Panther II, 681 F.3d at 118.  On appeal, the Second Circuit held that the district had improperly considered plaintiffs' proposed allegations in isolation from the allegations already contained in the complaint and that the denial of leave to amend was therefore an abuse of the district court's discretion.  Id. at 122.

The facts and holding of Panther II demonstrate that Plaintiffs have incorrectly characterized Panther II as an intervening change in controlling law justifying reconsideration of the denial of leave to amend here.  Indeed, Panther II is better read as affirming the familiar rule that a district court always has discretion to grant leave to amend, and that such leave "should be freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a); see also Foman, 371 U.S. at 182.  It is also worth noting that the Second Circuit in Panther II ordered the district court to grant leave to amend because, unlike in the present case, none of the claims made by plaintiffs required a showing of scienter, reliance, or loss causation.  681 F.3d 120.  Panther II's "relatively minimal burden" at the pleading stage is thus quite distinguishable from the high pleading standard that Plaintiffs have to meet here and which requires a showing of scienter, reliance, and loss causation.  See Lentell, 396 F.3d at 168 ("To state a claim for relief under § 10(b) and Rule 10b-5, [a] plaintiff[] must allege that [the defendant] (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.") (internal quotation marks omitted).  Panther II is further distinguishable from the present case

---

have dismissed complaints under Rule 9(b) without leave to amend.  See, e.g., In re Nokia OYJ (Nokia Corp.) Sec. Litig., 423 F. Supp. 2d 364, 410 (S.D.N.Y. 2006); Elliot Assoc., L.P. v. Hayes, 141 F. Supp. 2d 344, 360-61 (S.D.N.Y. 2000), aff'd, 26 F. App'x 83 (2d Cir. 2002).

14

because, here, Plaintiffs are not claiming that this Court viewed proposed allegations in isolation from those already made in their Amended Complaint.

> ii. <u>No newly discovered evidence justifies reconsideration of the denial of leave to amend</u>

As already discussed, Local Rule 6.3 done not afford a losing party the right to submit any affidavits or new evidence. Local Civ. R. 6.3; <u>see also</u> <u>Word v. Croce</u>, No. 00 CIV 6496, 2001 WL 755394, at *5 (S.D.N.Y. July 5, 2001) (Local Rule 6.3 "precludes a party from advancing new facts, issues or arguments not previously presented to the court."). Nonetheless, Plaintiffs argue that the Court should reconsider its denial of leave to amend on the basis of four "[c]ourt decisions and complaints that were issued and filed after Plaintiffs filed their Complaint in this action," (Rule 59 Mem. at 6), and also in light of information "recently obtained" from new witnesses who can provide "additional factual support for scienter allegations against the Individual Defendants," (<u>id.</u> at 9). Because Plaintiffs' "new evidence" does not include any matters that "might reasonably be expected to alter the conclusion" that this Court reached, it declines to reconsider the denial of leave to amend on this basis. <u>Cf.</u> <u>Shrader</u>, 70 F.3d at 257.

First, the decisions and complaints to which Plaintiffs refer were all filed—and publicly available—prior to the publication of this Court's Opinion on May 10, 2012.[9] These actions therefore cannot readably be construed as "new." Moreover, these actions are, at best, distantly related to the action here because they involve other defendants, other trusts, and, in some cases, other cities. (<u>See</u> Opp'n Mem. at 24-26 (drawing further distinctions between the cases).) Thus, contrary to Plaintiffs' assertions, they do not "make it abundantly clear that defendants engaged

---

[9]The four actions to which Plaintiffs refer are: (1) <u>Riccelli Enter., Inc. v. New York Workers Comp. Bd.</u>, No. 10-6901, 2012 Slip Op. 31250(U), which was initiated in November 2010 in the Superior Court of Ontario County and decided in April 2012, (attached as Ex. C to Rule 59 Mem.); (2) <u>Sunshine Bulk Commodities v. New York Workers Comp. Bd.</u>, which was decided in May 2011, (attached as Ex. D to Rule 59 Mem.); (3) the WCB complaint against SGRisk and UHY, which was filed in December 2011 (attached as Ex. E to Rule 59 Mem.); and (4) the second amended complaint in <u>Contractors Access Program of Cal. v. Majestic Capital, Ltd.</u> (the "CAP Action"), which was filed in the Superior Court of San Francisco for the County of San Francisco in December 2011, (attached as Ex. F to Rule 59 Mem.).

15

in a massive fraud by which they created CRM's trust administration business from whole cloth, in violation of the letter and spirit of New York State's Workers Compensation Law." (Reply Mem. at 1.) In addition, as this Court also made clear in its Opinion, allegations pleaded in complaints that have not been fully and finally adjudicated do not provide grounds for reconsideration. (See supra at 9-10.)

Second, the new confidential witnesses—referred to by Plaintiffs as "CWs"—also fail to "bolster" Plaintiffs' claims in the way which Plaintiffs assert that they do.[10] (See Reply Mem. at 3.) Not only were these witnesses available to Plaintiffs prior to the filing of their Amended Complaint, but the witnesses' unsworn statements to which Plaintiffs allude, either duplicate allegations already made in the Amended Complaint or fail to show with the particularity required that any of the Individual Defendants concealed information from or misled CRM investors in connection with the December 2005 IPO or at anytime thereafter. (See Op. at 41, 52-53 (finding that Plaintiffs had failed to show scienter or loss causation because the allegations did not show that the defendants had failed to disclose all known facts and risks concerning the regulatory funding status of CRMH).)

      iii.  None of Plaintiffs' other arguments justify reconsideration of the denial of leave to amend

Plaintiffs' final arguments rest on their contention that they should be afforded leave to amend because they did not have the benefit of discovery or adversarial briefing before their claims were dismissed with prejudice. These arguments are unavailing. First, prior to filing their Amended Complaint, Plaintiffs spent more than seven months conducting interviews and investigating relevant forensic reports that the WCB had commissioned and made public on their

---

[10]Specifically, Plaintiffs state that the new witnesses will provide information that (1) Hickey was responsible for CRM's under-reserving for claims, often through the improper process of stair-stepping, and that he held a meeting with claims adjusters in August 2004 during which Hickey started yelling, his face turned red, and he shouted that he would fire any adjuster who raised the reserve limits that he set for claims; and (2) Rakoff gave bonuses to a senior claims executive for "keeping reserves down." (Reply Mem. at 3.)

16

website.  Plaintiffs' efforts yielded an "extensive" and "voluminous" record that filled more than "eight binders in three bankers boxes" and which provided them with a unique advantage when amending their original Complaint.  (Am. Compl. at 2 n.1, Ex A; see also Rule 59 Mem. at 1 n.3 (describing nature of materials attached to the Amended Complaint); Local Rule 6.3 Mem. at 2 n.3.)  But even after having enjoyed such a unique advantage and filing more than 7,000-pages of evidentiary materials, Plaintiffs still failed to plead facts sufficient to show scienter or loss causation.  (Op. at 54.)  On this basis and because Plaintiffs had already had the opportunity to amend their Complaint once, the Court denied Plaintiffs leave to amend.  (Id.)  Plaintiffs have not offered any compelling reason why this decision should be reconsidered or disturbed.[11]

Plaintiffs also make much of the fact that, because their "initial [C]omplaint was superseded before being subject to a motion to test its sufficiency, the Court had not previously evaluated the merits of [their] pleadings and Plaintiffs had not had the benefit of a full adversarial briefing for their pleadings."  (Reply Mem. at 5 (internal quotation marks omitted); Rule 59 Mem. at 14-15.)  Pursuant to Rule 15, however, Plaintiffs did have at least one opportunity after the first round of adversarial briefing to file an amendment "as a matter of course" to the previously filed Amended Complaint.  Fed. R. Civ. P. 15(a)(1)(B).  Specifically, Rule 15 afforded Plaintiffs twenty-one days from the date when they were served the Motion to Dismiss, to cure pleading deficiencies identified by the Individual Defendants in their Motion to Dismiss.  Id.  Plaintiffs failed, however, to cure these deficiencies at that time,[12] and these

---

[11]Whether or not Plaintiffs had the benefit of discovery is not a dispositive issue because, even if Plaintiffs were granted leave to amend, the PSLRA would preclude discovery at this stage of the litigation.  Specifically, the PSLRA states, that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  See 15 U.S.C. § 78u-4(b)(3)(B).  No such particularized discovery has been requested in this action.

[12]Plaintiffs' memorandum in opposition to the Individual Defendants' Motion to Dismiss did ask for "leave to amend to cure any deficiencies," (Mem. in Opp'n to Mot. to Dismiss at 50, ECF No. 24), but the memorandum provided no explanation as to how Plaintiffs might attempt to do so and thus this Court had discretion to deny leave

17

deficiencies ultimately proved fatal to their claims. The Court therefore declines, at this late stage in the litigation, to reconsider its denial of leave to amend so that Plaintiffs can cure these deficiencies now. See Henderson, 502 F. Supp. at 375 ("The restrictive application of Local Rule 6.3 helps to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.") (internal quotation marks omitted).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Local Rule 6.3 Motion for Reconsideration is DENIED, and Plaintiffs Rule 59 Motion is also DENIED.

SO ORDERED.

Dated: New York, New York
       March 4, 2013

                                               _____s/s_____
                                               Robert P. Patterson
                                               U.S.D.J.

---

to amend, see In re UBS AG ERISA Litig., No. 08 CIV 6696, 2012 WL 1034445, at *3 (S.D.N.Y. Mar. 23, 2012) ("[I]t is within the court's discretion to deny leave to amend . . . when leave is requested informally in a brief filed in opposition to a motion to dismiss.") (citations and internal quotation marks omitted).